## LAKE ERIE AND WESTERN RAILROAD COMPANY v. HUFFMAN, ADMINISTRATRIX.

[No. 21,909.   Filed February 13, 1912.]

1. CARRIERS.—*Carriers of Passengers.—Injury.—Complaint.—Sufficiency.*—Where the complaint in an action against a railroad company for injury to a passenger, shows that decedent was a passenger of defendant, that by the negligence of defendants' servants he was carried beyond the station where he should have left the train, that he was unused to traveling and was led to believe by the statement of the conductor that he was on a car that would take him to his home without change, that another conductor discovered the mistake and undertook to set him off the train and signaled the train to stop for that purpose, but that before the train stopped, after it had decreased its speed, he was ordered to get off, and not being able to judge the speed of the train and that it was dangerous to do so, relied on the judgment of the conductor and jumped off and was hurt, it states facts sufficient to withstand a demurrer. pp. 131, 133.

2. CARRIERS.—*Carriers of Passengers.—Injury.—Complaint.—Demurrer.*—To justify the sustaining of a demurrer to a complaint in an action against a railroad company for injury to a passenger, there must either be a failure to show negligence on the part of the defendant or else a showing that the passenger was guilty of contributory negligence. p. 132.

3. CARRIERS.—*Carriers of Passengers.—Duty to Passenger.—Negligence.*—A carrier of passengers is chargeable with the highest

degree of care and liable for the slightest negligence in the exercise of such care. p. 132.

4. CARRIERS.—*Carriers of Passengers.—Negligence.—Inducing Passenger to Leave Moving Train.*—It is negligence for an officer or agent of a railroad company to induce a passenger to leave a train which is in motion. p. 132.

5. CARRIERS.—*Carriers of Passengers. — Alighting from Moving Train.—Negligence.*—It is not negligence *per se* for a passenger to alight from a slowly-moving train, but the question of the passenger's negligence is ordinarily one of fact under the circumstances. p. 133.

6. DEPOSITION.—*Use as Evidence.—"Same Cause."—Use in Another Cause.*—An action commenced by a passenger to recover for injuries sustained by the negligence of a railroad company, and an action brought by the administratrix of such passenger, after dismissal of the action brought by the decedent, to recover for his death resulting from such injuries, is the same cause of action within §456 Burns 1908, §440 R. S. 1881, so that the deposition of the decedent taken to be used in the former action may be read in evidence on the trial of the latter. pp. 133, 135.

7. DEPOSITION.—*Use as Evidence.—Use in Another Cause.—New Party.—Dismissal of Cause as to New Party.—Action Between "Same Parties".*—Where an action was commenced by a passenger against a railroad company to recover for injuries sustained, and, after dismissal of such action, an action was brought by the administratrix of said passenger's estate against said railroad company and its conductor to recover for his death resulting from said injuries, and which was subsequently dismissed as to said conductor, an objection to the admission of the deposition of the decedent, taken in the action brought by him, on the ground that the action brought by the administratrix was not an "action between the same parties" within the meaning of §456 Burns 1908, §440 R. S. 1881, is not well taken. p. 134.

8. DEPOSITION.—*Use as Evidence.—Use in Another Action.—Statute Construed.*—In the matter of the identity of cause and parties, §456 Burns 1908, §440 R. S. 1881, providing that a deposition taken in an action may be used in a subsequent action between the parties, does no more than to restate the common-law rule permitting the use of former evidence in subsequent trials. p. 135.

9. EVIDENCE.—*Testimony of Deceased Witness.—Use in Another Action.—Common-Law Rule.*—The common-law rule is that the testimony of a deceased witness in a former action, or in a prior stage of the same action, may be given in evidence in a subsequent action, provided, (1) that the party against whom such

testimony is offered (or a person identified with him in legal interest) had, at the time such evidence was originally given, the right and opportunity of cross-examining such witness upon the matters covered by the testimony offered; and (2) that the parties and the issues in the two actions are substantially the same.   p. 135.

10.   DEPOSITION.—*Use in Evidence.—Remaining "on File."—Admissibility in Subsequent Cause.*—Where a deposition of the plaintiff taken and filed in a circuit court of this State in an action pending therein by a passenger against a railroad company for personal injuries, was afterwards incorporated in the transcript on removal of the cause to the United States court, and by the federal judge ordered returned to the files of said circuit court, and after such return was withdrawn by attorneys in the cause for a few days for examination and then returned to the files where it remained continuously until produced by the clerk of said circuit court at the trial of an action brought by the administratrix of said passenger's estate, after dismissal of the action instituted by decedent, to recover for his death by reason of said injuries, such deposition is held to have remained continuously on file in the court in which the first action was instituted, within the meaning of §456 Burns 1908, §440 R. S. 1881.   p. 136.

11.   DEPOSITION.—*Use in Subsequent Trial.—Statute Construed.— Evidence of Deceased Witness. — Admissibility. — Common-Law Rule.*—The provisions of §456 Burns 1908, §440 R. S. 1881, relating to the admissibility of a deposition in a subsequent suit do not overthrow the common-law rule relating to the admissibility of the former testimony of a deceased witness, and the deposition of a witness, since deceased, although it may not have remained continuously on file as provided in said section of the statute, was properly admitted under this rule in the trial of a subsequent action between the parties.   p. 138.

12.   APPEAL.—*Pleading.—Amendment of Complaint.—Discretion of Court.*—It is in the discretion of the trial court to grant or refuse permission to amend the pleadings and its action will not be interfered with on appeal unless there has been an abuse of discretion harmful to the complaining party.   p. 140.

13.   APPEAL. — *Pleading.—Amendment of Complaint.—Preventing Removal of Cause.—Harmless.*—An amended complaint is considered as if it had been originally filed as amended, and no injustice was done to defendant in permitting plaintiff to amend by reducing his claim below $2,000 and thereby preventing the removal of the cause to the federal court.   p. 141.

14.   APPEAL.—*Pleading.—Amendment of Complaint.—Motive for Amendment Preventing Removal of Cause.*—It is not error to

permit an amendment of a complaint even though the reason for the amendment is to prevent a removal of the cause to the federal court.   p. 141.

15.   REMOVAL OF CAUSES.—*Amount in Controversy.—Reduction.— Defeating Removal.*—Where a petition for the removal of a cause was preceded by a motion for leave to amend the complaint by reducing the amount in controversy below $2,000, no error was committed in overruling the petition for removal, even though the amendment had not been made.   p. 142.

16.   APPEAL.—*Assignment of Error.—Answer.—Setting up Matters Occurring After Judgment Below.*—Where matters have occurred since an appeal was taken which render the attack on the judgment of the trial court unavailing, they must be specially pleaded in answer to the assignment of error.   p. 143.

17.   APPEAL.—*Assignment of Error.—Removal of Cause.—Decision of Federal Court.*—Where before appealing from the judgment of the trial court defendant sought a decision of the United States court on the question of its right to have the cause removed to that court, and obtained a decision adverse to it, such decision will eliminate from the appeal any question of error by the trial court in overruling a petition for the removal of the cause.   p. 144.

18.   TRIAL.—*Reception of Evidence.—Transcript of Proceedings in Former Action.—Reading in Presence of Jury.*—The transcript of the proceedings in a former action is admissible for the purpose of showing to the court a former action and its dismissal and the identity of issue and parties preliminary to the introduction of the deposition of a deceased witness taken in the former action, and the reading of such transcript in the presence of the jury, in the absence of a request that the jury be sent from the room, is not ground for reversal.   p. 145.

19.   TRIAL.—*Argument of Counsel.—Comment on Evidence.—Transcript of Proceedings in Former Action.*—Where the transcript of the proceedings in a former action was admitted for the purpose of informing the court as to the admissibility of the deposition of a deceased witness taken in the former action, such evidence is not a proper subject for comment in the argument to the jury.   p. 145.

20.   TRIAL.—*Argument of Counsel.—Objection.—No Question Presented for Review.*—Where defendant excepted to a statement of plaintiff's counsel in argument to the jury and requested the court to instruct the jury that it was not proper argument, and the court told the jury that it was not to be influenced by the statement, and there the matter rested, no question thereon is presented for review on appeal.   p. 145.

21. EVIDENCE.—*Death of Passenger from Negligence of Carrier.— Verdict for Plaintiff.—Sufficiency of Evidence.*—In an action against a railroad company for the death of a passenger from injuries caused by defendant's negligence, where it is conceded that the death was caused by the injuries and that the evidence as to the occurrences which brought about the injuries is conflicting and that the verdict must depend for support on the testimony of the deceased, and where such decedent's testimony supports the allegations of the complaint with reference to the negligenec of defendant and shows facts from which the jury was warranted in finding decedent free from contributory negligence, the evidence is sufficient to sustain a verdict for plaintiff. p. 146.

22. INTEREST.—*Money Judgment.—Statute.*—Pursuant to the provisions of §7951 Burns 1908, §5199 R. S. 1881, a money judgment should be for the sum awarded, together with interest thereon from date of the return of the verdict until satisfaction of the judgment.   p. 146.

23. APPEAL. — *Interest. — Money Judgment. — Harmless Error.* — Overruling a motion to modify a judgment so as to provide for interest is harmless error, since the statute (§7951 Burns 1908, §5199 R. S. 1881) reads into such judgment the right to collect interest thereon.   p. 147.

From Marshall Circuit Court; *Harry Bernetha,* Judge.

Action by Susan Huffman as administratrix of the estate of John Huffman, deceased, against the Lake Erie and Western Railroad Company.   From a judgment for plaintiff, the defendant appeals.   (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.)   *Affirmed.*

*W. H. H. Miller, C. C. Shirley, Samuel D. Miller,* and *John B. Cockrum,* for appellant.

*Charles H. Kellison, McConnell, Jenkines, Jenkines & Stuart,* and *M. Winfield,* for appellee.

Cox, J.—Appellee's decedent, John W. Huffman, was a passenger on one of appellant's trains returning from Columbus, Ohio, to Peru, Indiana.   At Tipton appellant's two lines of railroad intersect each other, the one on which decedent came from Columbus continuing westward and the other from the south running north through Tipton to Peru. Decedent should have changed cars at Tipton to reach his

destination, but did not, for the reason that he was not used to traveling on a railroad, and the conductor of the train from the east told him that he would not have to change, and to stay on that car, which he did. Another conductor took charge of the train at Tipton, and it proceeded towards its westward destination. As the train was leaving that city this conductor discovered that Huffman was on the wrong train, that he should have changed cars and so informed him. He offered to get off if the conductor would stop the train, the conductor gave the signal to stop and Huffman started to the platform. When he reached there, while the speed of the train had been checked it had not stopped, but notwithstanding this the conductor ordered him to get off, and he did so and was severely injured. His injuries did not result in immediate death, and he brought an action for damages therefor in the Fulton Circuit Court. Upon the petition of appellant the case was removed to the United States circuit court, and while it was pending there Huffman died. Susan Huffman, his wife and administratrix, was there substituted, a trial was had, which resulted in a disagreement of the jury, and the action was thereupon dismissed.

Appellee then brought this action in the Fulton Circuit Court to recover damages for the death of Huffman, and joined with appellant, as a defendant, George W. Dillon, the conductor who had ordered Huffman off the train. The action was subsequently dismissed as to Dillon. A change of venue was taken to the Marshall Circuit Court, and in a trial there a verdict for $1,999.99 was returned against appellant.

It is first contended by counsel for appellant that error was committed by the trial court in overruling appellant's demurrer to the complaint. The complaint is long 1. and need not be set out. It shows that the decedent was appellant's passenger; that by the negligence of appellant's servants he was carried beyond the station where he should have left the train; that being unused to

traveling, he was led to believe, by the statement of one of appellant's conductors, that he was on a car which would take him to his home without a change; that this mistake was discovered, and he was abruptly made acquainted with the fact that he was being carried another way and away from the place where he should have changed cars; that the conductor of the train undertook to set decedent off the train, so that he might return to the station, and signaled the train to stop for that purpose, but that before the train stopped, after it had decreased its speed, he ordered decedent to get off at a place where there was no platform or landing; that decedent, not being able to judge the speed of trains, and that it was dangerous to do so, relied on the judgment of the conductor, and jumped off and was hurt.

2.  To justify the sustaining of a demurrer, a complaint in such an action must either fail to show that there was negligence on the part of defendant, or else must show that the passenger was guilty of contributory negligence.

3.  Appellant, as a carrier of passengers, was chargeable with the highest degree of care and liable for the slightest negligence in the exercise of such care.

4.  It has been held that it is negligence for an officer or agent of a railroad company to induce a passenger to leave a train which is in motion. *Evansville, etc., R. Co. v. Athon* (1893), 6 Ind. App. 295, 33 N. E. 469, 51 Am. St. 303; *Jones* v. *Chicago, etc., R. Co.* (1889), 42 Minn. 183, 43 N. W. 1114; *Filer* v. *New York Cent. R. Co.* (1872), 49 N. Y. 47, 10 Am. Rep. 327; *Filer* v. *New York Cent. R. Co.* (1874), 59 N. Y. 351; *Bucher* v. *New York, etc., R. Co.* (1885), 98 N. Y. 128; *Eddy* v. *Wallace* (1892), 49 Fed. 801, 1 C. C. A. 435; 3 Hutchinson, Carriers (3d ed.) §1221.

It was, it appears from the allegations of the complaint, through the fault of appellant's conductor that Huffman remained on the train, when he should have got off at the

station. This being so, the least that could be done to fulfill the duty appellant owed him, was to give him the opportunity to alight safely. Manifestly the duty was not discharged by compelling him to alight without bringing the train to a stop.

It does not appear from the complaint that Huffman was guilty of contributory negligence. It is not negligence *per se* for a passenger to alight from a slowly-moving train. *Louisville, etc., R. Co.* v. *Crunk* (1889), 119 Ind. 542, 21 N. E. 31, 12 Am. St. 443; *Pennsylvania Co.* v. *Marion* (1890), 123 Ind. 415, 23 N. E. 973, 7 L. R. A. 687, 18 Am. St. 330; *Louisville, etc., R. Co.* v. *Bean* (1894), 9 Ind. App. 240, 36 N. E. 443; *Harris* v. *Pittsburgh, etc., R. Co.* (1904), 32 Ind. App. 600, 70 N. E. 407.

And especially is this true when the passenger alights by the direction or order of one in authority on the train, as the passenger must ordinarily obey the reasonable commands and directions of those in charge of the train and has the right to assume, to some extent at least, that he will not be ordered and directed into danger. The question of the passenger's contributory negligence is ordinarily a question of fact under the circumstances. *Louisville, etc., R. Co.* v. *Kelly* (1884), 92 Ind. 371, 47 Am. Rep. 149; *Cincinnati, etc., R. Co.* v. *Carper* (1887), 112 Ind. 26, 13 N. E. 122, 14 N. E. 352, 2 Am. St. 144; *Louisville, etc., R. Co.* v. *Bisch* (1889), 120 Ind. 549, 22 N. E. 662; *Louisville, etc., R. Co.* v. *Halsapple* (1895), 12 Ind. App. 301, 38 N. E. 1107; *Pittsburgh, etc., R. Co.* v. *Gray* (1902), 28 Ind. App. 588, 64 N. E. 39; 2 Thornton, Negligence §§1815, 1824, 1825, 1924.

There was no error committed in overruling the demurrer to the complaint.

While the action of John W. Huffman was pending, his deposition, touching the facts upon which it was brought, was taken, and subsequently used as a part of the plaintiff's evidence in the trial in the United States court. At the time of the accident, Huffman

was traveling alone, and an action for his injuries or death must succeed if at all on his testimony as to the facts connected with his injury as the testimony of no other witness was available. The trial court sustained the motion of Dillon, the conductor, to suppress the deposition as to him, he not having been a party to the action in which it was taken. A like motion of appellant was overruled, and the deposition admitted in evidence against it. This latter action of the court, it is claimed, was the commission of reversible error against appellant. It is argued that the right of appellee to avail herself in this case of the testimony of her deceased husband, given in the former trial, depends on §456 Burns 1908, §440 R. S. 1881, which reads as follows: "When an action has been dismissed, and another action has been commenced for the same cause, the depositions taken in the first action may be used in the second or any other action between the parties, or their assignees or representatives, for the same cause; but it must appear that the depositions have been duly filed in the court where the previous cause was pending, and have remained on file from the time the action was dismissed until the time at which it was proposed to use them."

It is urged that the deposition could not be used as evidence in this action, for the reason that this is not an action for the "same cause," and that by reason of making

7. Dillon a party to this action, when he had not sustained that relation to the first action, it was not a "second or any other action between the same parties." The principle upon which such evidence is admitted, is that there has been given the opportunity and right of cross-examination. Dillon had not, and as to him the court suppressed and excluded the deposition. 1 Greenleaf, Evidence (15th ed.) §164. Moreover, the case was dismissed as to Dillon. But appellant had been a party to the other action, was given and availed itself of the opportunity to cross-examine, and its objection on account of a difference of parties is not

well taken.  *Town of Walkerton* v. *Erdman* (1894), 23 Can. Sup. Ct. 352.

That the two actions were for the "same cause" and between "the parties, or their assignees, or their representatives" is not an open question in this State, so far as the right to use in the subsequent case the testimony of a witness given in the first trial where such witness has thereafter died is concerned.  *Indianapolis, etc., R. Co.* v. *Stout* (1876), 53 Ind. 143.  See, also, *Erdman* v. *Town of Walkerton* (1893), 20 Ont. App. 444; *St. Louis, etc., R. Co.* v. *Hengst* (1904), 36 Tex. Civ. App. 217, 81 S. W. 832. *Town of Walkerton* v. *Erdman, supra,* which is a case almost identical in all respects with the one before us.

In the matter of the identity of cause and parties, the section of our statutes does no more than restate the common-law rule which permits the use of former evidence in subsequent trials without in any way restricting it. This rule, which is old and universally recognized as a rule of necessity to the end that justice shall not fail, and that a litigant should be entitled to prove his case by the best evidence at his disposal, is thus stated:  The testimony of a deceased witness in a former action, or in a prior stage of the same action, may be given in evidence in a subsequent action provided, (1) that the party against whom such testimony is offered (or a person identified with him in legal interest) had, at the time such evidence was originally given, the right and opportunity of cross-examining such witness upon the matters covered by the testimony offered; and (2) that the parties and the issue in the two actions are substantially the same.  Chamberlayne's Best, Evidence (Notes 1908) §496; 1 Greenleaf, Evidence (15th ed.) §§163-168; Stephen's Digest, Law of Evidence 187; Taylor, Evidence §464; Elliott, Evidence §§495, 1186 and note; 2 Chamberlayne, Mod. Law of Ev. Chap. 22, p. 2083, where the subject is exhaustively treated; 13 Cyc. 1004; 16 Cyc. 1088.

It is further contended that under the provisions of §456, *supra,* it must appear that the deposition has remained on file in the court in which the former action was pending from the time that action was dismissed until the time at which it was proposed to use it; and that as this does not appear, but the contrary, the deposition for that reason should have been suppressed. The deposition, as has been stated, was taken in the action of John W. Huffman while it was pending in the Fulton Circuit Court, and was there filed. Afterwards it was incorporated in the transcript on removal to the United States court, at the instance of one of the attorneys for appellant. By order of the federal judge it was eliminated from the transcript, and ordered returned to the files of the Fulton Circuit Court, which was done. It was withdrawn thence by one of the attorneys for appellee, who left his receipt therefor with the clerk, for use in the trial in the federal court. It was thereafter returned by him, and remained on file continuously with the clerk of the Fulton Circuit Court until he produced it in the Marshall Circuit Court for use in the trial of the case, except that one of appellant's attorneys had temporarily taken it from the files for examination a few days before this trial.

If the provision of the section should be held to be as serious an obstruction to the admission of the deposition as contended, it would instantly be manifest that appellant could not take advantage of the acts of its own attorneys in removing it from the files. The only basis then for the claim that the deposition was rendered inadmissible by reason of not being continuously on file, is the fact that it was taken by counsel for appellee for use in the trial in the federal court. The statute should not be given such a narrow construction. There is no pretense that the deposition did not remain the same, or that any harm resulted to appellant from the temporary removal from the files. Ordinarily the

mere fact that a deposition has been temporarily withdrawn from the office of the clerk, after it has been filed there, and then returned, will not render it inadmissible. 6 Ency. Pl. and Pr. 561.

The general rule that depositions should remain on file in the office of the clerk does not prevent a temporary withdrawal by permission of the clerk for such necessary purposes as inspection and to make copies. 13 Cyc. 966.

It has been held that taking a deposition from the files, and out of the county, without leaving a copy, in violation of a rule of court, did not render the deposition inadmissible. The court held that the rule was not to be held destructive of the deposition, but rather to preserve the evidence which it furnished. *Dailey* v. *Green* (1850), 15 Pa. St. 118.

In *Moran* v. *Green* (1845), 21 N. J. L. 562, the deposition of a foreign witness had been taken on a commission issued from the supreme court of the state. The statute required the deposition to be deposited with the clerk of that court, "there to remain as a record." It was held that a temporary withdrawal from the files of that court for use in the circuit on the trial of a cause, did not prevent its subsequent use. It was said by the judge who spoke for the court: "If we are to give a literal meaning to the words, 'there to remain,' the document can never be lawfully removed. But I apprehend this was not the intention of the legislature. * * * It can mean nothing more, than that it shall remain as a file of the court, and under its control." See, also, *Hogaboom* v. *Price* (1880), 53 Iowa 703, 6 N. W. 43; *Harris's Appeal* (1890), 58 Conn. 492, 20 Atl. 617.

We are constrained to hold in this case that the withdrawal of the deposition from the files of the Fulton Circuit Court for use on the trial in the federal court did not render it inadmissible. The clerk of the former court, to whose custody it was committed, testified that with the exceptions above noted it had been constantly on file until he carried

it, in response to a subpoena, to the court in which the trial was had. It was constructively on file in that office all the time required by the statute.

Moreover, if it should be conceded that the provision in question creates a condition as arbitrary as is contended for relating to the admissibility of a deposition in a subsequent suit, still it does not indicate an intention on the part of the legislature to overthrow the above mentioned, long standing rule of the law of evidence relating to the former testimony of a deceased witness. That rule applies to testimony given by depositions as well as to oral testimony in court, and by virtue of it, if not by the statute, the court properly admitted the depositions.

The death of Huffman made it possible to use his deposition in the trial of the first action. The substantial identity of the issue and of the parties in this action with the former established the relevancy of the testimony, embodied in the deposition, in this case. No reason is evident for its exclusion in this case which would not have also applied when offered and used in the first; and no reason exists for its admissibility in the first case which does not argue as forcefully for its admissibility in this. When a witness who was present in court and testified orally in a case has died, the rule permits that testimony to be proved in substance, in a subsequent trial of the same case, or in another case in which the issue and parties are substantially the same, by the uncertain and inexact memory of one who heard the witness testify, and assumes to be able to remember it. *Horne* v. *Williams* (1864), 23 Ind. 37; *Rooker* v. *Parsley* (1880), 72 Ind. 497; 2 Chamberlayne, Mod. Law of Ev. §§ 1682-1687.

Here, in the second case, the testimony of the dead witness is offered exactly as it was given in the first. As said by the author of a late and scholarly work on evidence: "It is not a syncopated condensation of the evidence of the witness. It *is* his evidence, given, tested and preserved with knowledge on the part of all concerned in taking it that it

may and probably will be used, on some subsequent occasion, as the statement of the witness." 2 Chamberlayne, Mod. Law of Ev. §1708.

Obviously the probative force of the evidence of what the testimony of the witness was in the former case would be far greater in the last instance than in the first. This, it is true, may go more to the weight of the evidence than to its admissibility, but it does show that the application of the rule of evidence in question to this case is more surely promotive of justice than in a case where the oral testimony of a deceased witness is to be proved orally by another witness who speaks from memory, and in this a reason for the application of the rule appears. 16 Cyc. 1088, 1089; 2 Elliott, Evidence §1186, and note; 2 Chamberlayne, Mod. Law of Ev. Chap. 22, 2083 *et seq.; Town of Walkerton* v. *Erdman, supra; Erdman* v. *Town of Walkerton, supra; St. Louis, etc., R. Co.* v. *Hengst, supra; Maine Stage Co.* v. *Longley* (1837), 14 Me. 444.

In *St. Louis, etc., R. Co.* v. *Hengst, supra,* a case decided by the Texas Court of Civil Appeals and in which a writ of error was refused by the Supreme Court of that State, it was held that the deposition of a witness, taken under a statute which limited the use of the deposition to the action in which it was taken, was admissible, under the rule of evidence under consideration, in a subsequent action, where the issue and parties were in substance the same and the witness was dead. To the same effect is *Maine Stage Co.* v. *Longley, supra.*

It has been held under this rule that the former testimony of a deceased witness was provable, by the shorthand writer's or the judge's notes of the evidence, in another action, even though other evidence was available to prove the same facts. *Wright* v. *Doe d. Tatham* (1834), 1 Ad. & El. 3, 28 E. C. L. 28. If the correctness of this decision be conceded, there would seem to be no escape from the conclusion that the rule is properly applicable here. For it is said

to be the administrative duty of the court to protect the substantive right of the party to prove his contention, so far, at least, as the *res gestae* are concerned, by the most probative evidence reasonably within his power. When the proponent's necessity for producing a secondary grade of evidence is established, the right to submit it will be recognized by the court. 2 Chamberlayne, Mod. Law of Ev. §1620.

After the trial court suppressed the deposition of John W. Huffman as against Dillon, thereby leaving appellee's action as to him without material support by evidence, Dillon, at the conclusion of all the evidence in the case, filed a motion for a peremptory instruction for a verdict to be returned in his favor. Appellee then filed a waiver of all claims for damages in excess of $1,999.99, and request for leave to amend the prayer for damages by making such prayer a demand for that sum only. This was followed immediately by a dismissal of the cause as to Dillon. Thereupon, appellant filed its petition and bond for removal of the cause to the United States circuit court, alleging in the petition that it is an Illinois corporation, that appellee is a citizen of Indiana, and that the matter in dispute, exclusive of interest and costs, exceeded $2,000, which petition was denied. A motion by appellant to strike out appellee's waiver and request for leave to amend was overruled, and such leave granted, and the trial proceeded and resulted in a verdict for the sum of $1,999.99.

It is contended by appellant that the court erred in permitting appellee to amend the complaint by reducing the demand. It is well settled that the trial court may use its discretion in granting or refusing permission to amend the pleadings, and that this court will not interfere, unless it is clearly shown that there has been an abuse of discretion by which the complaining party has been harmed. *Chicago, etc., R. Co.* v. *Jones* (1885), 103 Ind. 386, 389, 6 N. E. 8; *Levy* v. *Chittenden* (1889), 120 Ind. 37, 22 N. E. 92; *Chi-*

*cago, etc., R. Co.* v. *Hunter* (1891), 128 Ind. 213, 27 N. E. 477; *Wabash, etc., R. Co.* v. *Morgan* (1892), 132 Ind. 430, 31 N. E. 661, 32 N. E. 85; *Lindley* v. *Sullivan* (1893), 133 Ind. 588, 32 N. E. 738, 33 N. E. 361; *Raymond* v. *Wathen* (1895), 142 Ind. 367, 41 N. E. 815; *La Plante* v. *State, ex rel.* (1899), 152 Ind. 80, 52 N. E. 452; *Whitcomb* v. *Stringer* (1903), 160 Ind. 82, 66 N. E. 443; *Cleveland, etc., R. Co.* v. *Miles* (1904), 162 Ind. 646, 655, 70 N. E. 985; *Smith & Stoughton Corp.* v. *Byers* (1898), 20 Ind. App. 51, 49 N. E. 177; *Case* v. *Moorman* (1900), 25 Ind. App. 293, 58 N. E. 85; *Citizens St. R. Co.* v. *Heath* (1902), 29 Ind. App. 395, 62 N. E. 107.

But it is claimed that appellant was harmed in its right to have the cause removed to the federal court, upon the dismissal as to Dillon, by the amendment in this case 13. which reduced the demand below the sum of $2,000, which, with diversity of citizenship, makes a cause removable. It does not seem, however, that any injustice was done appellant by the amendment. The complaint originally might have demanded only $1,999.99, and appellant would not, in that event, have been entitled to a removal, regardless of whether Dillon was or was not a party defendant. An amended complaint is considered as if it had been originally filed as amended.

It is further contended that it is error to permit an amendment, except on good cause shown, and it is argued that the court erred in permitting the amendment 14. in this case, since appellee's only reason for amending was in order to prevent a removal to the federal court. Even if that was the only reason, yet we cannot say that the court could not, within its discretion, consider the reason good cause for the amendment and promotive of the speedy conclusion of a cause which had been practically finished. In *Maine* v. *Gilman* (1882), 11 Fed. 214 it is said: "It cannot injure the defendant to have the damages diminished, excepting that it would prevent his remov-

ing the cause to the circuit court. It may be taken for granted that this was the motive of the plaintiff in offering his amendment. But if it were the motive is not illegal.''

It is next asserted by appellant that the court erred in overruling its petition to remove the cause to the United States circuit court, for the reason that the amendment of the complaint reducing the amount in controversy was not in fact made until after the petition for removal was filed and the bond approved. Numerous cases are cited by appellant which hold that when a sufficient petition and bond have been filed, an amendment thereafter cannot defeat the jurisdiction of the federal court. It has been held, however, that if the motion to amend precedes the petition to remove, the suit is not removable, even though the amendment has not actually been made. *Waite* v. *Phoenix Ins. Co.* (1894), 62 Fed. 769, 770.

As the motion to amend preceded the petition to remove in this case, it would seem that at the time the petition was presented the action was not removable.

Indeed, it may well be doubted whether, if the amendment had not been proposed or made, and the demand of the complaint had been left as originally made in excess of the sum of $2,000, the action would have been removable. The case of *Powers* v. *Chesapeake, etc., R. Co.* (1898), 169 U. S. 92, 18 Sup. Ct. 264, 42 L. Ed. 673, by authority of which appellant claims the right of removal in this case, has been somewhat limited by later decisions of the Supreme Court of the United States.

In the case of *Lathrop, Shea & Henwood Co.* v. *Interior Construction, etc., Co.* (1909), 215 U. S. 246, 30 Sup. Ct. 76, 54 L. Ed. 177, it was held: ''Where plaintiff in good faith insists on the joint liability of all the defendants until the close of the trial, the dismissal of the complaint on the merits as to the defendants who are citizens of plaintiff's state does not operate to make the cause then removable as to nonresident defendants and to prevent the plaintiff from

taking a verdict against the defendant who might have removed the cause had they been sued alone, or if there had originally been a separable controversy as to them.''

In *Alabama, etc., R. Co.* v. *Thompson* (1906), 200 U. S. 206, 217, 26 Sup. Ct. 161, 50 L. Ed. 441, it was said: ''The right to remove depends upon the case made in the complaint against both defendants jointly, and that right, in the absence of a showing of fraudulent joinder, did not arise from a failure of the complainant to establish a joint cause of action.'' See, also, *Chicago, etc., R. Co.* v. *Willard* (1911), 220 U. S. 413, 31 Sup. Ct. 460, 55 L. Ed. 521; *Whitcom* v. *Smithson* (1900), 175 U. S. 635, 20 Sup. Ct. 248, 44 L. Ed. 303; *Kansas City, etc., R. Co.* v. *Herman* (1902), 187 U. S. 63, 23 Sup. Ct. 24, 47 L. Ed. 76; *Southern R. Co.* v. *Carson* (1904), 194 U. S. 136, 24 Sup. Ct. 609, 48 L. Ed. 907; *Howe* v. *Northern Pac. R. Co.* (1902), 30 Wash. 569, 70 Pac. 1100, 60 L. R. A. 949; *Illinois Cent. R. Co.* v. *Harris* (1904), 85 Miss. 15, 38 South. 225; *Cincinnati, etc., R. Co.* v. *Evans's Admr.* (1908), 129 Ky. 152, 110 S. W. 844.

Under the allegations of the complaint, the conductor and appellant were joint wrongdoers, and there is no pretense that there was a fraud in joining the former with the latter as a defendant. The action was prosecuted against both in apparent good faith, and failed as against the conductor only because the exclusion of the deposition as to him worked a failure of proof against him.

Moreover, a final and conclusive reason exists prohibiting a reversal of this case for action of the trial court denying appellant's petition to remove. So much of appellant's assignment of error as relates to the action of the trial court in denying appellant's petition to remove has been met in this court by a verified answer in bar, showing that appellant, after verdict and before judgment of the Marshall Circuit Court, invoked the jurisdiction of the United States circuit court on the question of its right to remove the cause, and showing further that that court,

on the petition of appellee, remanded the cause to the state court before this appeal was filed in this court. To this answer appellant appeared and demurred. Counsel for appellant argue that the answer in question is not allowable under our practice, but to this we do not agree. A special answer to the assignment of errors is affirmative, and in the nature of an answer in the trial court in confession and avoidance. It does not controvert the assignment of errors, but avers facts showing that it has ceased to be effective. A special plea is always required where matters have occurred since the appeal was taken which render the attack upon the judgment of the trial court unavailing. In general, it pleads matters which occurred after the judgment below was entered. Elliott, App. Proc. §§407, 408; *Newman v. Kiser* (1891), 128 Ind. 258, 26 N. E. 1006; *Union Traction Co. v. Basey* (1905), 164 Ind. 249, 250, 73 N. E. 263.

17. Appellant sought and obtained from the United States circuit court a decision of the question of its right to have the cause removed before this appeal was filed. That decision was adverse to it, and eliminated any federal question from this appeal. A state court cannot be held to have decided against a federal right when it is the federal court which has denied its possession. The question of its jurisdiction was one for the federal court to settle, and having done so, this court cannot review its decision and determine the question adversely if it would. *Chesapeake, etc., R. Co. v. McCabe* (1909), 213 U. S. 207, 29 Sup. Ct. 430, 53 L. Ed. 765; *Missouri, etc., R. Co. v. Fitzgerald* (1896), 160 U. S. 556, 16 Sup. Ct. 389, 40 L. Ed. 536; *Stockley v. Cissna* (1907), 119 Tenn. 135, 104 S. W. 792; *Walker v. Wabash R. Co.* (1906), 193 Mo. 453, 92 S. W. 83; *Feeney v. Wabash R. Co.* (1907), 123 Mo. App. 420, 99 S. W. 477; *Tilley v. Cobb* (1894), 56 Minn. 295, 57 N. W. 799; *Pioneer Sav., etc., Co. v. Peck & Fly* (1898), 20 Tex. Civ. App. 111, 49 S. W. 161.

Another ground of error is asserted and argued by counsel

in the admission in evidence, over the objection of appellant, of transcripts of the proceedings in the Fulton Circuit Court, and in the federal court in the former case. These transcripts were read to the court to show a former action, and its dismissal, and the identity of issue and parties preliminary to the introduction of the deposition of John W. Huffman and for the purpose of qualifying it for admission in evidence. For this purpose they were admissible. It does not appear that the complaint which is now made, that they were read in the presence of the jury, was made in the court below, or that the presence of the jury was the basis of the objection made to the trial court. If appellant had objections to their being read to the court in the presence of the jury, it could have requested that the jury be sent out of the room. Nor is any harm to appellant evident from the fact that the jury heard the reading.

The transcripts of the proceedings so introduced in evidence showed the disagreement of the jury in the trial of the former case. Upon objection being made, the court refused to permit one of the attorneys for appellant, in his argument to the jury, to comment on this fact, and complaint is made that this was error. The evidence in question, having been admitted for the sole purpose of informing the court of the admissibility of the deposion, was not a proper subject of comment in the argument to the jury.

Complaint is also made of the alleged misconduct of one of the attorneys for appellee in his argument to the jury. The record shows that appellant excepted to a certain statement of the counsel, which is set out, and asked the court to instruct the jury that it was not proper argument. The court told the jury that it was not to be influenced by the statement, and there the matter rested. So far as the record discloses, counsel for appellant were satisfied at the time with the court's action. If they were not, if

they thought that the court had not been sufficiently severe and explicit in what it did, it was incumbent on them to make it known to the court then by some further objection or motion. No question is presented for review by this court. *Staser* v. *Hogan* (1889), 120 Ind. 207, 222, 21 N. E. 911, 22 N. E. 990; *Lingquist* v. *State* (1899), 153 Ind. 542, 545, 55 N. E. 426; *Vannatta* v. *Duffy* (1892), 4 Ind. App. 168, 30 N. E. 807.

It is finally contended that the verdict is not sustained by the evidence. It is conceded that it is shown that Huffman's death was caused by his injuries. It is further conceded that the evidence as to the occurrences which brought about his injuries is conflicting, and that the question, whether the verdict is supported by the evidence, must be answered by the testimony of decedent. This evidence not only proves every material allegation of the complaint with reference to the negligence of appellant, and facts from which the jury was fully warranted in finding that appellee was free from contributory negligence, but it made a stronger case than that alleged; and from what was said in determining the objections to the complaint, the conclusion must follow that the evidence is sufficient to sustain the verdict.

We find none of appellant's claims of reversible error sustained.

The verdict was returned on March 11, 1908, and the judgment was rendered thereon September 28, 1908, for the amount of the verdict, without any provision for interest. During the term in which the judgment was rendered, appellee filed a written motion to modify it, so that it should draw interest from the date of the return of the verdict. This motion was overruled, and appellee, having excepted to the ruling, has assigned the ruling as crosserror.

Section 7951 Burns 1908, §5199 R. S. 1881, provides as follows: "Interest on judgments for money, hereafter ren-

dered, shall be from the date of the return of the verdict or finding of the court, until the same shall be satisfied, at the rate per cent. agreed upon by the parties in the original contract, not exceeding six per cent.; and if there be no contract by the parties, at the rate of six dollars a year on one hundred ·dollars.''

By the force of the provisions of this statute, appellee was entitled to interest on the amount awarded her by the verdict, judgment having been rendered in her favor for that sum, from the day the verdict was returned; and good practice would seem to require that the judgment should so provide. To prevent controversy, and to aid the clerk in the performance of his duties in the matter of entering satisfaction of the judgment in such cases, the judgment should be for the sum awarded, together with interest thereon at the rate of six per cent. per annum from the specified date of the return of the verdict until the judgment shall be satisfied. *Myers* v. *Jarboe* (1877), 56 Ind. 57, 60; *Salem-Bedford Stone Co.* v. *Hobbs* (1901), 27 Ind. App. 604, 607, 61 N. E. 956. See, also, *New York, etc., R. Co.* v. *Roper* (1911), 176 Ind. 497, 96 N. E. 468.

But the overruling of the motion to modify the judgment could not have harmed appellee, for the statute reads into such a judgment the right to collect interest thereon from the date of the verdict, and appellee was entitled to it, notwithstanding the judgment, by its terms, did not provide for it.

Judgment affirmed.

NOTE.—Reported in 97 N. E. 434. See, also, under (1, 2) 6 Cyc. 626; (3) 6 Cyc. 591; (4) 6 Cyc. 614; Ann. Cas. 1912C 794; 1 Ann. Cas. 781; 21 L. R. A. 361; (5) 6 Cyc. 648; (6) 13 Cyc. 1004; (10) 13 Cyc. 1004; (11) 13 Cyc. 993; (12) 3 Cyc. 327; 31 Cyc. 368; (13) 31 Cyc. 441; (14) 31 Cyc. 437; (15) 31 Cyc. 393, 438; (16) 2 Cyc. 1007; (17) 3 Cyc. 223; (18) 38 Cyc. 1336; (19) 38 Cyc. 1494; (20) 38 Cyc. 1503; (21) 29 Cyc. 621, 626; (22) 22 Cyc. 1519, 23 Cyc. 799; (23) 3 Cyc. 383. As to duty to prevent passenger from leaving train while in motion, see 31 L. R. A. (N. S.) 625. On subject of negligence of passenger in getting off moving

train, 22 L. R. A. (N. S.) 741. As to use of emphatic words like "great care," "utmost care," or "highest care" in instructing jury as to duty of carrier to passengers, see 3 L. R. A. (N. S.) 94.